UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL JAMES BAKER, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | Case No. 2:15-cv-01052-HNJ |
| ) | |
| COMMISSIONER, SOCIAL SECURITY ) | |
| ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION**

Plaintiff Michael James Baker seeks judicial review pursuant to 42 U.S.C. § 405(g) of an adverse, final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Secretary"), regarding his claim for Disability Insurance Benefits (DIB). The court has carefully considered the record, and for the reasons stated below, **AFFIRMS** the Commissioner's decision.[1]

## **LAW AND STANDARD OF REVIEW**

To qualify for disability benefits and establish his entitlement for a period of disability, the claimant must be disabled as defined by the Social Security Act and the

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including the entry of final judgment. (Doc. 11).

Regulations promulgated thereunder. The Regulations[2] define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

In determining whether a claimant suffers a disability, the Commissioner, through an Administrative Law Judge (ALJ), works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. The burden rests upon the claimant on the first four steps of this five-step process; the Commissioner sustains the burden at

---

[2] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499. Although the Social Security Administration amended a pertinent regulation at bar, Listing 12.05, effective January 17, 2017, the amendment applies only to Social Security applications filed after the amendment date. *Watkins v. Berryhill*, No. 7:16-CV-242-FL, 2017 WL 3574450, at *4 (E.D.N.C. Aug. 1, 2017), *report and recommendation adopted*, No. 7:16-CV-242-FL, 2017 WL 3568406 (E.D.N.C. Aug. 17, 2017); *Jordan v. Commissioner of Social Security*, 2017 WL 3034386 (N.D. Ohio July 18, 2017) (applying version of Listing 12.05(C) in effect at time of ALJ's decision, but finding error in ALJ analysis and remanding for new hearing and analysis under new version). Accordingly, the undersigned relies upon the prior version in effect at the time of the ALJ's decision.

step five, if the evaluation proceeds that far. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

In the first step, the claimant must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ." *Id.* at § 404.1520(c).

At step three, the evaluator must conclude the claimant is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00–114.02. *Id.* at § 404.1520(d). If a claimant's impairment meets the applicable criteria at this step, that claimant's impairments would prevent any person from performing substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525. That is, a claimant who satisfies steps one and two qualifies automatically for disability benefits if he suffers from a listed impairment. *See Jones*, 190 F.3d at 1228 ("If, at the third step, she proves that her impairment or combination of impairments meets or equals a listed impairment, she is automatically found disabled regardless of age, education, or work experience.") (citing 20 C.F.R. § 416.920).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluation proceeds to the fourth step where the claimant bears the burden of proving he is incapable of meeting the physical and

mental demands of his past relevant work. 20 C.F.R. § 404.1520(e). At this step, the evaluator must determine whether the plaintiff has the residual functional capacity ("RFC") to perform the requirements of his past relevant work. *See id.* § 404.1520(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will determine the plaintiff is not disabled. *See id.*

If the claimant is successful at the preceding step, the fifth step shifts the burden to the Commissioner to prove, considering claimant's RFC, age, education and past work experience, whether he is capable of performing other work. 20 C.F.R. § 404.1520(f)(1). If the plaintiff can perform other work, the evaluator will not find him disabled. *See id.* § 404.1520(a)(4)(v); *see also* 20 C.F.R. § 404.1520(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g).

In this review, the court reviews the ALJ's "'decision with deference to the factual findings and close scrutiny of the legal conclusions.'" *Parks ex rel. D.P. v. Commissioner, Social Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015) (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). The court must determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the proper legal standards. *Winschel v. Comm'r of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Although the court must "scrutinize the record as a

whole . . . to determine if the decision reached is reasonable and supported by substantial evidence," *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted), the court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for that of the ALJ. *Winschel*, 631 F.3d at 1178 (citations and internal quotation marks omitted). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion" *Id.* (citations omitted).

## FACTUAL AND PROCEDURAL HISTORY

Mr. Baker applied for DIB on June 20, 2012 (Doc. 9-6 at 5). The Commissioner denied his claim, and Mr. Baker timely filed a request for a hearing on August 3, 2012. (Doc. 9-5 at 2, 12). The Administrative Law Judge ("ALJ") held a hearing on Mr. Baker's claim on September 11, 2013. (Doc. 9-3 at 33). Mr. Baker was 62 years old at the time of his hearing. (*See* doc. 9-5 at 45; Doc. 9-6 at 5). The ALJ issued an opinion denying Mr. Baker's claim on October 17, 2013. (Doc. 9-3 at 17).

In his opinion, the ALJ first determined that Mr. Baker met the Social Security Act's insured status requirements through December 31, 2015. (Doc. 9-3 at 22).[3]

---

[3] Mr. Baker contends that the ALJ erred in determining his date last insured. (Doc. 13 at 4). Indeed, Mr. Baker's earnings record indicates that he met the insured status requirements through March 31, 2016. (*See* doc. 9-6 at 17). However, the ALJ's disability determination found Mr. Baker met the insured status requirements through December 31, 2015. (Doc. 9-4 at 2). The court need not resolve this discrepancy because it is not material to the issues before the court.

Applying the five-step sequential process, the ALJ found at step one that Mr. Baker had not engaged in substantial gainful activity from his alleged onset date of February 8, 2012, through the date of the ALJ's opinion, October 17, 2013. (*Id.*). At step two, the ALJ found that Mr. Baker exhibited during the relevant time period the following severe impairments: osteoarthritis of the left knee, status post 2012 arthroscopic left knee surgery, and hypertension. (*Id.*). At step three, the ALJ found that Mr. Baker's impairments, or combination of impairments, did not meet or equal any impairment for presumptive disability listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 23).

Next, the ALJ found that Mr. Baker exhibited the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c) with the following limitations: Mr. Baker can lift and carry 50 pounds occasionally and 25 pounds frequently; he can occasionally climb ladders, ropes, or scaffolds, and can frequently climb ramps or stairs, kneel, crouch, or crawl; and he cannot perform in concentrated exposure to work hazards. (Doc. 9-3 at 24).

At step four, the ALJ determined that Mr. Baker can perform his past relevant work as a service observer. (*Id.* at 27). The ALJ's determination at step four directs a finding that Mr. Baker is not disabled, but the ALJ also continued in the alternative to step five of the sequential process. At step five, the ALJ determined that, considering Mr. Baker's age, education, work experience, and RFC, there exist a significant

number of other jobs in the national economy that Mr. Baker could perform. (*Id.*). Based on his findings at step four and, in the alternative, at step five, the ALJ concluded Mr. Baker was not disabled as defined by the Social Security Act at any time from February 8, 2012, through October 17, 2013, the date of the ALJ's decision. (*Id.* at 28).

On May 28, 2015, the Appeals Council denied review, which deems the ALJ's decision as the Commissioner's final decision. (Doc. 9-3 at 2). Mr. Baker filed his complaint with the court seeking review of the ALJ's decision. (Doc. 1).

## ANALYSIS

In this appeal, Mr. Baker argues that the ALJ's determination of his RFC is not based on substantial evidence because the ALJ failed to (1) assign proper weight to the opinions of his treating physician, (2) properly consider his subjective complaints of pain, and (3) properly apply the medical vocational rules. The court finds that substantial evidence supports the ALJ determinations notwithstanding Mr. Baker's contentions.

### A. The ALJ Properly Considered the Opinions of Mr. Baker's Treating Physician.

Mr. Baker argues that the ALJ erred by giving little weight to the opinions of his treating physician, Dr. Lisha Thornton. (Doc. 13 at 5-7). The ALJ must give "substantial or considerable weight" to the opinion of a treating physician "unless

'good cause' is shown." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). Good cause exists when: (1) the evidence did not bolster the treating physician's opinion; (2) evidence supported a contrary finding; or (3) a treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.* An ALJ must clearly articulate the reasons for affording less weight to a treating physician's opinions. *Id.* An ALJ does not commit reversible error when one, he articulates specific reasons for declining to give the treating physician's opinion controlling weight, and two, substantial evidence supports these findings. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (per curiam).

Mr. Baker contends that the ALJ should have given more weight to a physical capacities evaluation and clinical assessment of pain that Dr. Thornton completed on September 19, 2013. (Doc. 13 at 6). In the physical capacities evaluation, Dr. Thornton opined that Mr. Baker could: lift 20 pounds occasionally and 10 pounds frequently; sit for 3 hours and stand or walk for 1 hour in an 8-hour day; and stoop occasionally, but never climb stairs, bend at the knee, or work around hazardous machinery. (Doc. 9-10 at 27). In the September 2013 clinical assessment of pain, Dr. Thornton opined that Mr. Baker experiences levels of pain that would be "distracting to adequate performance of daily activities or work" and that physical activity would

lead to greatly increased pain.  (*Id.* at 28).  The ALJ considered these opinions, but gave them little weight.  (Doc. 9-3 at 26).

The record evidence demonstrates the ALJ established good cause to discount Dr. Thornton's September 2013 opinions.  First, as the ALJ discussed, Dr. Thornton's own treatment notes contradict her opinions.  (Doc. 9-3 at 26; Doc. 9-8 at 5-20; Doc. 9-20 at 2-24).  Dr. Thornton examined Mr. Baker in May 2012, one month after he had arthroscopic surgery on his left knee, and found he had a normal gait and no swelling or tenderness.  (Doc. 9-8 at 11).  Mr. Baker's condition worsened by November 26, 2012, and he reported that "[h]is knees hurt a lot and he has difficultly climbing stairs."  (Doc. 9-10 at 11).  Upon physical examination at that time, Dr. Thornton found crepitis in Mr. Baker's knees with reduced range of motion, and she cautioned Mr. Baker to avoid climbing or bending.  (*Id.* at 13-14).

However, Mr. Baker's condition improved by May 29, 2013: when Dr. Thornton examined Mr. Baker that day, she found he had a normal gait and range of motion, and no tenderness or swelling.  (*Id.* at 8-9).[4]  In addition, the May 29th records contain no indication that Mr. Baker complained of problems with his knees, and Dr. Thornton did not recommend any restrictions to Mr. Baker's functioning.  (*Id.* at 5-9).

---

[4] Likewise, medical records from UAB Hospital on April 22, 2013, where Mr. Baker received care for GI problems and an ulcer, reflect normal findings from the physical examination of Mr. Baker's musculoskeletal system, including a normal range of motion, normal strength, no tenderness, and no swelling.  (Doc. 9-8 at 54).

Rather, Dr. Thornton's treatment notes indicate that she provided Mr. Baker with educational materials about exercise on May 29, 2013, which suggests she encouraged him to exercise. (*Id.* at 9). In addition, Dr. Thornton's treatment notes do not indicate that Mr. Baker had disabling or distracting levels of pain; rather, her notes consistently demonstrate that Mr. Baker was in no acute distress. (Doc. 9-8 at 11, 31; Doc. 9-10 at 7, 13). Thus, Dr. Thornton's September 2013 opinions depict inconsistency with her treatment notes.

Next, the records from Dr. Gregg Carr, Mr. Baker's orthopedic surgeon, also support the ALJ's decision to give little weight to Dr. Thornton's September 2013 opinions. Mr. Baker first visited Dr. Carr on March 28, 2012 for left knee pain caused by an injury he incurred while moving furniture. (Doc. 9-8 at 32). After conservative treatment did not alleviate Mr. Baker's pain, Dr. Carr performed arthroscopic surgery on Mr. Baker's left knee on April 19, 2012. (*Id.* at 31, 38). Dr. Carr's records reveal that the surgery improved Mr. Baker's condition. At a follow-up visit on June 8, 2012, Mr. Baker reported that he was "pleased with [the] results of surgery" and exhibited only an "occasional 'twinge'" in his left knee. (*Id.* at 29, 48). Dr. Carr continued to treat Mr. Baker's knee pain with a series of three injections in July and August 2012, and Mr. Baker reported that his pain improved following the first two injections. (*Id.* at 45-47). Dr. Carr recommended a medial unloading brace for Mr.

Baker's knee on July 30, 2012 and fitted Mr. Baker for the brace on August 6. (*Id.* at 45-46).

Based on the records before the court, Mr. Baker did not seek treatment from Dr. Carr for knee pain after August 6, 2012. In addition, other than recommending a knee brace, Dr. Carr's treatment notes contain no evidence indicating that he placed restrictions on Mr. Baker's functioning. (*See id.* at 29-40, 45-48).

The ALJ provided sufficient reasoning for assigning Dr. Thornton's opinions little weight, and substantial evidence supports the ALJ's determination. Accordingly, the ALJ did not commit any reversible error by giving little weight to Dr. Thornton's September 2013 opinions.

**B.   The ALJ Did Not Err by Rejecting Mr. Baker's Subjective Testimony.**

Mr. Baker next takes issue with the ALJ's rejection of his subjective complaints of pain because he contends that his work history supports his credibility. (Doc. 13 at 7). "[C]redibility determinations are the province of the ALJ . . . ." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). An ALJ may discredit a claimant's subjective testimony if the ALJ clearly articulates his or her reason for doing so and substantial evidence supports the ALJ's finding. *Id.*; *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *Stricklin v. Astrue*, 493 F.Supp. 2d 1191, 1195 (N.D. Ala. 2007).[5]

---

[5] On March 28, 2016, SSR 16-3p superseded SSR 96-7p, the ruling concerning subjective complaints about pain that was in effect when the ALJ issued a decision in this case. Soc. Sec.

At the hearing, Mr. Baker testified that his knee pain, which is worse in his left knee, has prevented him from working since February 8, 2012. (Doc. 9-3 at 43, 47, 53). Specifically, he testified to the following symptoms or impairments: he suffers constant pain in both knees and "a level three out of a four on arthritis" in his left knee; he "cannot kneel and climb," or do as much as he did before his surgery on his left knee; he can stand or walk for about "about an hour" before he needs to sit down; he can sit for about thirty minutes before he needs to get up and walk around; and he spends two to three hours every day sitting in a recliner with his legs elevated. (*Id.* at 43, 48, 51).

While Mr. Baker's exemplary work history supports his credibility, the issue before the court queries whether substantial evidence supports the ALJ's determination, not whether evidence exists to support a contrary conclusion. *See Moore*, 405 F.3d at 1211. The ALJ articulated reasons for discounting Mr. Baker's subjective complaints of disabling pain. (Doc. 9-3 at 25-26). The ALJ found that Mr. Baker "alleges a greater degree of debilitation than what objective evidence can support" and that the objective evidence does not portray a disabling level of

---

Ruling 16-3p (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at *1. SSR 16-3p eliminates the term "credibility" from social security policy but does not change the factors that an ALJ should consider when examining subjective pain testimony. *See id.*, at *2-3. Moreover, SSR 96-7p does not apply retroactively, *Hargress v. Soc. Sec. Admin., Comm'r*, 874 F.3d 1284, 1290 (11th Cir. 2017), and when a federal court reviews a final decision in a claim for DIB, the court reviews the decision using the rules that were in effect at the time of the decision. SSR 16-3p, 2017 WL 5180304, at *1.

functional limitations. (*Id.* at 25, 27). Substantial evidence supports the ALJ's findings.

First, the objective medical evidence does not support Mr. Baker's testimony that he suffers disabling knee pain. As discussed above, Dr. Carr's treatment notes do not indicate that he placed any restrictions on Mr. Baker's functioning other than fitting him for a knee brace, and Mr. Baker did not seek further treatment from Dr. Carr after he received the brace and a series of injections that helped alleviate his knee pain in July and August 2012. (*See* doc. 9-8 at 29-40, 45-48).

Records from UAB hospital reflect that upon physical examination on April 22, 2013, Mr. Baker displayed normal range of motion, normal strength, and no tenderness or swelling in his musculoskeletal system. (*Id.* at 54). Likewise, Dr. Thornton found Mr. Baker exhibited a normal range of motion and no tenderness or swelling in his musculoskeletal system at his May 29, 2013, physical examination, which is the most recent medical record before the court, and Dr. Thornton placed no restrictions on Mr. Baker's functioning after her exam that day. (Doc. 9-10 at 5-9).

In addition, the ALJ noted that Mr. Baker rendered statements to his treating physicians that were inconsistent with his hearing testimony. (Doc. 9-3 at 26). For example, at an appointment with his cardiologist on October 24, 2012, Mr. Baker reported he had no joint pain. (Doc. 9-9 at 42). In addition, Dr. Thornton's records

contain no indication that Mr. Baker complained of knee pain on May 29, 2013, less than four months before his hearing before the ALJ. (Doc. 9-10 at 5-9).

Substantial evidence supports the ALJ's determination that Mr. Baker's hearing testimony about the limiting effects of his symptoms was not entirely credible. Thus, the ALJ did not err by discounting Mr. Baker's subjective testimony.

**C.   The ALJ Did Not Err in Applying the Medical Vocational Guidelines.**

Mr. Baker asserts the ALJ erred when he failed to favorably apply the Medical-Vocational Guidelines, commonly called the grids. (Doc. 13 at 8-10). An ALJ only uses the grids if he or she determines a claimant is unable to return to past relevant work. *See* 20 C.F.R. pt. 404, subpt. P, appx. 2, § 200.00(a). The grids do not apply if the ALJ determines a claimant can return to past relevant work. *See id.* If a claimant cannot return to past relevant work, the grids serve as a framework to determine whether "there is other work . . . that the claimant has the ability to perform." *See Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004).

The grids provide tables corresponding to the exertional level, i.e., sedentary, light, or medium work, a claimant can perform. *See* 20 C.F.R. pt. 404, subpt. P, appx. 2, §§ 201.01-203.31. Each table identifies rules based on different vocational factors, including the claimant's age, education, and work experience, that direct a finding of disabled or not disabled. *See id.* If the applicable rule directs a finding of disabled,

then at step five, the ALJ must find that the claimant cannot perform other work and is disabled. Soc. Sec. Ruling 83-14 (S.S.A. Jan. 1, 1983), 1983 WL 31254, at *3. On the other hand, if the applicable rule directs a finding of not disabled, the ALJ must rely on other evidence, usually the testimony of a vocational expert ("VE"), to determine if the claimant can perform other work that is available in a significant number in the national economy. *Id.* at *3-4. In addition, if a claimant cannot perform a full-range of work at a given level of exertion, or if the claimant has non-exertional limitations, the ALJ may not rely exclusively on the grids to find the claimant is not disabled. *Phillips*, 357 F.3d at 1242.

In this case, at step four of the sequential analysis, the ALJ found that Mr. Baker could return to his past relevant work as a service observer. (Doc. 9-3 at 27). Accordingly, the Medical-Vocational Guidelines do not apply, and Mr. Baker's argument the ALJ erred by failing to apply the grids favorably is unavailing.

Even if the grids applied in this case, they would not direct a finding that Mr. Baker is disabled. The ALJ determined that Mr. Baker retains the RFC to perform medium work, and he properly used the grids corresponding to medium work. (*See* doc. 9-3 at 24, 28). Based on Mr. Baker's age, education, and previous work experience, the applicable rule directs a finding of not disabled. *See* 20 C.F.R. pt. 404, subpt. P, app. 2, rule 203.07. Moreover, based on Mr. Baker's RFC, he possesses limitations that impede his ability to perform a full range of medium work. (Doc. 9-3

at 24). Therefore, the ALJ properly relied upon VE testimony to determine whether jobs existed in significant numbers in the national economy that Mr. Baker could perform. (*See* doc. 9-3 at 28); *see also Phillips*, 357 F.3d at 1242. As a result, the ALJ did not err by failing to find Mr. Baker disabled based on the Medical-Vocational Guidelines.

### D. Substantial Evidence Supports the ALJ's Determination of Mr. Baker's RFC.

The ALJ determined Mr. Baker has the RFC to perform medium work with the following limitations: "He can lift and carry 50 pounds occasionally and 25 pounds frequently. He can occasionally climb ladders, ropes, or scaffolds, and can frequently climb ramps or stairs, kneel, crouch, or crawl. He is unable to perform in concentrated exposure to work hazards." (Doc. 9-3 at 24).[6] Objective medical records from Mr. Baker's treating physicians support the ALJ's determination.[7]

As discussed above, after arthroscopic surgery in April 2012, Mr. Baker reported only an "occasional 'twinge'" in his left knee, and Mr. Baker experienced improvement in his left knee after a series of Orthovisc injections in July and August 2012. (Doc. 9-8 at 45, 48). In addition, although Mr. Baker reported knee pain and

---

[6] Mr. Baker critiques the RFC as internally inconsistent. (Doc. 13 at 10). However, restricting Mr. Baker from working "in concentrated exposure to work hazards" does not preclude him from occasionally climbing ladders, ropes, and scaffolds because occasional exposure to a hazard is not concentrated exposure. (*See* doc. 9-3 at 24).

[7] Mr. Baker contends no medical source opinion supports the RFC determination, (doc. 13 at 7-8), but his contention is not persuasive because a treating physician's treatment records and notes are medical opinions. *See Winschell v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).

difficulty climbing stairs when he saw Dr. Thornton in November 2012, (Doc. 9-10 at 11), his condition improved prior to his hearing before the ALJ. (*See* at 29-40, 45-48). Indeed, upon physical examination on April 22, 2013 and May 29, 2013, Mr. Baker exhibited normal range of motion, normal strength, and no tenderness or swelling in his musculoskeletal system, and he assumed a normal gait on May 29. (Doc. 9-8 at 54, 313). In light of these records, substantial evidence supports the ALJ's determination of Mr. Baker's RFC, and the court cannot and will not reweigh evidence. *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (The court's "limited review precludes . . . re-weighing the evidence.") (citing *Bloodsworth*, 703 F.2d at 1239).

## CONCLUSION

Based on the foregoing, the court **AFFIRMS** the ALJ's finding that Mr. Baker was not disabled within the meaning of the Social Security Act.

DONE this the 8th day of February, 2018.

_____
HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE
JUDGE